(98 App. Div. 629)

In re DAKE'S WILL.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. WILLS—CODICILS—EXECUTION—EVIDENCE.

Evidence reviewed, and *held* sufficient to establish that two sheets of paper, purporting to be a codicil to a will, were executed at the same time, though fastened together in the inverse order, and constituted a single instrument.

Appeal from Surrogate's Court, Livingston County.

Application by Fanny M. Dake for the probate of the will and codicils of Jonathan M. Dake, deceased. From a decree admitting certain codicils to a will to probate, the heirs appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Jacob Stern, for appellants.

Fletcher C. Peck, for respondents.

SPRING, J. Jonathan M. Dake, a resident of Nunda, Livingston county, died February 7, 1900, leaving a last will and testament dated February 5, 1894, with two alleged codicils, one bearing date February 20, 1898, and the other November 7th of that year. These instruments were admitted to probate by the surrogate's court of Livingston county after a protracted contest. Upon appeal to this court that part of the decree admitting the will was sustained, but a new trial was ordered as to that part admitting the two purported codicils. 75 App. Div. 403, 78 N. Y. Supp. 29.

The testator was 83 years of age at the time of his death. He left several children, and his relations with some of them were not pleasant. In a tin box in which his papers were kept, the testamentary instruments propounded were found attached together, and there were other documents in the bundle. These papers were all in the handwriting of the testator, and were not attached in the order of their respective dates. A letter to his son Moses dated July 4, 1899, was the first of the series of papers; second, the codicil of November 2, 1898; then the codicil of February 20, 1898, the second page or leaf appearing first; then the will itself. At the bottom of the codicil of November, 1898, was an explanatory statement made by the testator, and also one at the end of the will. On the upper left-hand corner of the first page of the February codicil, in the order of their union, appear the words "2ent. page" "2nd page" with a like notation on the same place of the succeeding page, except it is designated "1st page"; the notations being in the handwriting of the testator. These instruments were all written on legal cap paper, and the different leaves or sheets were pasted together with mucilage. In view of the generally disfigured appearance of the bundle, the vagueness of the testimony, the lack of satisfactory proof identifying the two leaves composing the first codicil, and also the insufficiency of proof that the later codicil referred to the will proved, a new trial was deemed advisable upon the preceding appeal. Absolute rejection of these codicils was not necessarily the result of the decision then rendered. The hope or impression prevailed that upon a new trial additional proof might be elicited tending to confirm or condemn these two alleged codicils. The court at the close of its opinion said:

"It is possible that, upon a new hearing as to said codicils, further evidence may be produced bearing upon the objections now urged to their probate."

The proof in the present record is reasonably satisfactory in demonstrating the genuineness of these instruments. In general, the subscribing witnesses testified in more detail and with more circumspection concerning their execution than upon the former trial, which involved the validity of the will itself, as well as the codicils. On the former appeal much stress was laid upon the suggestion that there was no identification of the unity or connection of these two leaves claimed to compose the February codicil. Upon the last trial Gurnee, one of the subscribing witnesses, testified that at the time of the execu-

tion of the February codicil he unfolded the instrument, which consisted of one sheet, and on the first page he noticed the name of Hazel A. Dake, which appears thereon in a distinct and easily observable location as one of the legatees; that the second page, as then arranged, was the one where he and the other subscribing witness wrote their names at the request of the testator. This witness says:

"The paper, when I opened it, this part here [the attestation clause], was on the lower sheet. The other part of it was attached together at the time that I signed it—not separated—when I opened the paper. I opened it up on the table and signed my name to it here, and he asked me if I recognized his signature and I told him I did. In unfolding it I noticed the name Hazel A. Dake. I would not swear it was on the first page. My recollection is it was on the first page as I opened it. That would be my recollection."

Mr. Nessenson, the other subscribing witness, substantially coincides with this version, except that he noticed only the word "Hazel." Both witnesses united in testifying that this instrument was executed at the house of Nessenson. Mrs. Nessenson, the wife of the subscribing witness, who was not sworn on the former trial, testified that she was present at the execution of this paper; that she procured the ink, and saw Mr. Gurnee unfold the paper, and heard Mr. Dake call it a will, and she asked if a will executed on Sunday was lawful; and all the witnesses agreed that it was on Sunday when this paper was signed by them. The proof shows a valid execution of the paper, and identifies it as the instrument propounded. As already indicated, on the second trial they further testified that the paper was then composed of one sheet, and it was so described in the attestation clause. The testator was a fertile writer on legal or fools cap paper, and apparently knew the distinction between a sheet and a page; and his possession of this knowledge is further evidenced by the circumstance that in the attestation clause of the November codicil, which was written entirely upon one page of legal cap, he designated the instrument as "the above on this page." Gurnee testified that these two codicils were executed on the same day at the house of Nessenson. Nessenson and his wife controvert his testimony in this regard. Nessenson fixed the time of execution of this first codicil in February or March, 1898, and Mrs. Nessenson substantiated her recollection of this date by her return from visiting a sick relative. Nessenson testified that the November codicil was executed in the fall of 1898, and his wife said that in that fall her husband spoke to her about signing another will for Dake. The surrogate has accepted the version given by Nessenson, and finds the codicils were executed as of their respective dates. The discrepancy in the testimony as to the time and place of execution of these two codicils is not sufficient to impeach their genuineness. A witness called to attest the execution of a will is prone not to have the details of the transaction indelibly impressed on his mind. The testamentary disposition of property by a competent testator should not be defeated for the failure of recollection by a subscribing witness, where it is clear that the essentials of the statute have been substantially met.

On this trial several letters and papers were produced which the testator, in his thrift, had preserved. Each of these documents, when composing more than two leaves, were pinned together in the inverse

order in which they were written.    Probably, in pasting together the papers composing his will and codicils, the testator inadvertently transposed the two leaves of the first codicil.    He saw no harm in this disarrangement, for it was quite a common method with him, and that in fact is the order in which the batch among which are the testa-mentary papers are physically attached.    He was cautious, however, to note on the margin of the codicil the proper order of the leaves.    We have therefore a codicil duly executed at the end thereof, but subsequently, in arranging his testamentary papers for preservation, the testator accidentally changed the order of the leaves, but made a note of his oversight in order to obviate any confusion·or misapprehension after his death concerning it.    The suggestion that a leaf or two may have been removed from this codicil may be dismissed as unfounded. The attesting witnesses identified the first page, and were explicit in saying that the document only contained one sheet, and the testator so described it in the attestation clause.    It is not conceivable that the testator, familiar as he was with the execution of wills, would deliberately destroy the effect of the instrument either by abstracting a portion or adding to it after execution.    Again, there is evidence in the previous record, which is presented on this appeal, that the testator stated shortly before his death that he had bequeathed his grandchildren Walter and Hazel $500 each, and these legacies comprise the sum of the bequests in the first codicil.    There is abundant evidence to show that the old gentleman preferred his youngest son to his older children. They were away from him, in business, and were well along in life, while John, the youngest son, was at home, and had manifested no especial ability to succeed.    The will of 1894 has been established as the last will of the testator, and the November codicil was found attached to it, which implies it is a codicil to that will.    The context shows the change from the will proved, and these suggestions, in connection with the oral and other proof in vindication of the authenticity of this paper, lead to the conclusion that this was intended as a codicil to the will already admitted to probate.    We think the lack or vagueness of the testimony identifying or establishing these codicils, and which induced the granting of the new trial, has been fully supplied, and the decree of the Surrogate's Court should be affirmed.

Decree of Surrogate's Court affirmed, with costs.    All concur.