---

(84 Misc. Rep. 1)

### In re EASTON'S WILL.

(Surrogate's Court, New York County. January 20, 1914.)

1. WILLS (§ 289*)—PROBATE—PRESUMPTIONS—ALTERATION.
    By the common law which, unaffected by statute changing it, is by constitutional reservation the law of this state, unexplained alterations in a will are presumed to have been made before execution.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

2. COMMON LAW (§ 8*)—RULES OF DECISION—DECISIONS OF ENGLISH COURTS.
    The decisions of the privy council of England, though of limited authority in England, are of plenary authority in New York, if made before the Revolution, as that tribunal was the original court of appeal from the province of New York.

    [Ed. Note.—For other cases, see Common Law, Cent. Dig. § 8; Dec. Dig. § 8.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3.. WILLS. (§ 289*)—PROBATE—PRESUMPTIONS—ALTERATION. ,

    The burden is on a party; seeking to derive an advantage from an alteration in a will, to adduce some evidence from which a jury may infer that the alteration was made before the will was executed.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

4. WILLS (§ 289*)—PROBATE—PRESUMPTIONS—ALTERATION.

    Assuming that unexplained alterations in a will are presumed to have been made after execution, such presumption is rebuttable by internal evidence arising from the nature of the corrections or completions, or by extrinsic ·evidence, such as the oath of the attesting witnesses and even the declarations of the testator, if made before the execution of the will.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

5. WILLS (§ 302*)—PROBATE—PRESUMPTIONS—ALTERATION.

    Where interlineations in a holographic will were made in the testator's own handwriting with the same ink and apparently by the same pen 'as the will, the presumption, if any there was, that they were made after the execution of the will, was rebutted, and the interlineations were entitled to probate as a part of the will.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 575, 581, 700–710; Dec. Dig. § 302.*]

Proceeding to prove the last will and testament of Peter Z. Easton, deceased. Probate granted.

Harris, Corwin, Gunnison & Meyers, of New York City, for proponent.

FOWLER, S. [1] This is a proceeding to probate a holographic testament. The will on its face contains several alterations or interlineations or emendations not noted before execution. The question now here is: Are these changes in the cursory script entitled to probate? There is no extrinsic evidence showing when these changes or interlineations were made, and we are confronted by the suggestion that there is therefore a presumption of law applicable, viz., that changes or alterations in the text of a will if unexplained are presumed to be made after execution.

It is often stated at large that interlineations or alterations in a will are presumed to have been made after execution. We find this statement repeated by text-writers and even applied by that supremely competent judge of this court, Mr. Surrogate Rollins, in his judgment in Wetmore v. Carryl, 5 Redf. Sur. 544; Dyer v. Erving, 2 Dem. Sur. 160, 182, a case often cited by text-writers. Were it not for the subsequent decisions of the Court of Appeals of this state, which I shall hereafter refer to, I should not feel at liberty to re-examine a point of this character when once decided by Mr. Surrogate Rollins in this court. But the subsequent decisions of our Court of Appeals compel me to review the law on this point.

The so-called presumption that interlineations or alterations in a will in the absence of proof were made subsequent to execution grew up, I think, in England only after the Wills Act of 1 Victoria, and I doubt extremely if it is even yet rightly termed a presumption of the common law. I am confirmed in this doubt by the statement of that very

able man, Sir W. P. Wood, afterwards Lord Chancellor, in Williams v. Ashton [1860] 1 J. & H. 115, 118, where he said in substance that he did not think the so-called presumption correctly stated the law of England. It is not, however, the modern law of England which we must examine in this matter, but the law of this great and ancient state, for the modern law of England is often affected by changes which have no application to our particular jurisprudence.

In examining the question indicated, it may be well to determine primarily what was the common law regarding alterations in last wills and testaments in the absence of proof of the time of making them, for the common law, unaffected by statute changing it, is by constitutional reservation now the law of this case. I may add that I am of the opinion that our constitutional adoption of the common law means always just what it says, and I have no patience with a course which leaves the determination of the common law to the volition or imagination of the modern magistrate. The common law adopted by the Constitution of this state is always susceptible of exact determination, and, whether we like it or not, it is the law until the Legislature alters it.

It seems to me it is not doubtful that before the statute (chapter 26, 1 Vict.) it was an established doctrine of the common law in both England and New York that, where there was nothing to show at what time an interlineation or alteration was made in a will, it would be presumed to have been made before execution on the principle, "Præsumuntur omnia rite acta fecisse." See note to Waddilove's Digest of Cases in Ecc. Cts. 333. Now, this statement is the exact contrary of a prevalent notion, but the following adjudications which I have found confirm Dr. Waddilove's conclusion: In the Goods of George Streaker, 28 Law Journal, p. 50; Benson v. Benson, L. R. 2 P. & D. 170; Banks v. Thornton, 2 Hare, 176, 180; In the Goods of Pennington, 1 Notes of Cas. in Ecc. Cts. 399. That such was the state of the common law of New York is confirmed by a very able opinion of the Court of Appeals in the leading case of Crossman v. Crossman, 95 N. Y. 145, where it is said at page 152:

"The claim on the part of the contestants is that the law presumes that this interlineation was made after execution. * * * But we do not so understand the law of this state. Where an interlineation, fair upon the face of an instrument, is entirely unexplained, we do not understand that there is any presumption that it was fraudulently made after the execution of the instrument."

This is distinctly recognized as the true doctrine by Judge Brown in Matter of Conway, 124 N. Y. at page 466, 26 N. E. 1028, 11 L. R. A. 796. It will be perceived that the conclusion of Judge Brown is quite in line with that of Sir W. P. Wood (subsequently Lord Chancellor) in Williams v. Ashton, before noticed, as is the decision in Matter of Dake, 75 App. Div. 403, 78 N. Y. Supp. 29, which I think is controlling here.

The fundamental law of this state governing interlineations in last wills and testaments is the common law, unaffected by any statute similar to section 21 of the English Wills Act of 1837 (chapter 26, 1 Vict.). Section 21 of the English Wills Act provided in substance that no interlineation made in any will after execution shall have any effect, unless

re-executed or signed by the testator and the witnesses opposite or near to the interlineation. Many of the English cases since the Wills Act of 1 Victoria turn upon the construction of section 21 and are not of much weight on the proposition now here.

The presumption that alterations in wills were made subsequent to execution seems to have been first announced in England after the Wills Act of 1 Victoria, by Dr. Lushington, while sitting for Sir H. Jenner Fust in the Prerogative Court of Canterbury. Burgoyne v. Showler, 1 Robt. 5, 13; In the Goods of E. Saumarez, 3 Notes of Cas. Ecc. Cts. 208, notis, Prerog. Ct., 28 June, 1844, said to be confirmed by the Privy Council in Cooper v. Bockett, 4 Moo. P. C. C. 419. Cooper v. Bockett, and other late·English cases of no particular authority here, were followed very literally by Mr. Surrogate Rollins in his opinion in Wetmore v. Carryl, 5 Redf. Sur. 444; and Dyer v. Erving, 2 Dem. Sur. 182; but I think the so-called doctrine of Wood v. Bockett is not adopted by the later decisions of our Court of Appeals.

[2] At this point I take leave to note a very important distinction in the value of cases decided by the Privy Council of England and one which I have never seen noticed. In England the decisions of the Privy Council always have been of limited authority. Great Northern Rail. Co. v. Swaffield [1847] L. R. 9 Ex. 132, 138; Abrahms v. Deakin [1891] 1 Q. B. 516, 521. But in New York they are of plenary authority if decided before the Revolution, as that tribunal or its predecessor, the King in Council, was long the original Court of Appeal from this province, and its decisions were consequently conclusive in New York. The importance to our common law of such decisions on appeals is emphasized, if we remember that at one time the great Lord Mansfield, then Mr. Murray, was the agent of New York and often argued such appeals before the council. While these early appeals from New York are not generally reported, the records on appeal are extant and at one time I was tolerably familiar with them, as I early recognized their great importance to questions affecting the particular jurisprudence of this ancient commonwealth. Now, it will be observed that the so-called doctrine of Cooper v. Bockett, 4 Moo. P. C. C. 419, applied by Mr. Surrogate Rollins in Wetmore v. Carryl, 5 Redf. Sur. 544, was decided by the Privy Council only after our independence of the Crown, and at a time when that tribunal was powerless to affect the common law of New York. That the case was not decisive of the common law I have shown. That it was not authoritative here is apparent. I have even some doubt whether Lord Brougham ever enunciated such a presumption in Cooper v. Bockett as it commonly stands for in the text-books.

The examination which I have made of the origins of the presumption in question leads to a very great doubt in my mind whether or not there is in the jurisprudence of this state any well-settled presumption that interlineations or alterations in a will, in the absence of all proof, are made after execution. But happily I am not left to my own imperfect deductions in this matter, for the Court of Appeals, in Crossman v. Crossman has, as before stated, confirmed my doubt, as has Matter of Dake, 75 App. Div. 403, 78 N. Y. Supp. 29. That the rule involved

in the so-called presumption is now doubted even in England is apparent from the sed contra nearly always put against Cooper v. Bockett in books of some authority. Beale's Cardinal Rules of Interpretation, 610; Mortimer on Probate, 210. That in some cases the burden will be on proponent, or on the legatee or the devisee claiming under it, to explain an alteration in a testamentary script, is undoubted law. But this rule is not at all the same thing as the naked presumption invoked in this proceeding. At common law unexplained alterations in a will were presumed to have been made before execution, as already stated.

[3, 4] But if there is in modern law a presumption that unexplained alterations in wills are made after execution, it belongs in any event to that class of indeterminate presumptions known to common lawyers as "disputable presumptions," and to the civilians as "presumptiones juris." The only true presumptions at common law are "irrebuttable presumptions," called by the civilians "presumptiones juris et de jure." Incontrovertible presumptions are not presumptions, but rules of substantive law. The main characteristic of a rebuttable presumption is, of course, that it is rebuttable. It is very obvious that, when the exceptions to the applications of this kind of presumption under consideration are more numerous than the applications, it is a pseudo presumption or one not ripe to be regarded as a "presumption of law." Lord Hatherley admirably said on this point in Williams v. Ashton (1860) 1 J. & H. 115, 118:

· "I do not think that it is quite a correct mode of stating the rule of law to say that alterations in a will are presumed to be made at one time or another. The correct view is that the onus is cast upon the party who seeks to derive an advantage from an alteration in a will, to adduce some evidence from which a jury may infer that the alteration was made before the will was executed."

This the surrogate understands to be an eminently correct statement of the law, touching the point involved in this matter now before him, and one as applicable to our law as to that of England.

But if the presumption under discussion is in our law a presumptio juris, there are modifications recognized by the common law to be noticed before it is ever entitled to application. The common law governing unexplained changes in the text of wills raises certain distinctions between alterations and interlineations. It may be stated as a general proposition of law that alterations of a radical kind in dispositive provisions of wills are regarded by the courts with less favor than those interlineations which on their face are mere corrections of scriveners' errors, or completions of an incompleted consecutive text. In some such instances the nature of such corrections or completions affords internal evidence that they were made prior to execution, and not subsequent thereto. In that event there is no conclusive presumption that the interlineation or correction was subsequent to execution. In the Goods of Cadge (1868) 1 P. & D. 543; Matter of Wood, 11 N. Y. Supp. 157; Matter of Dake, 75 App. Div. 403, 78 N. Y. Supp. 29; Crossman v. Crossman, 95 N. Y. at page 152. The second modification which I will notice is that the presumption may always be rebutted by internal evidence apparent on the face of the will itself that the alteration was made before execution. Birch v. Birch, 1 Robertson's Ecc.

Rep. 675; In the Goods of Cadge [1868] L. R. 1 P. & D. 543, 545. Although the point is not now here, it may be stated that the presumption may also be rebutted by extrinsic evidence, such as the oath of the attesting witnesses and even the declarations of the testator, provided they were made before the execution of the will itself. In the Goods of Cadge, L. R. 1 P. & D. at page 545.

[5] With this brief reference to the law of this matter, I proceed to its determination. It is apparent from an examination of this will for probate that the script is a holograph, and this is a matter of some weight (Matter of Wood, 144 App. Div. 259, 129 N. Y. Supp. 5), and also that the interlineations are made in the testator's own handwriting and with the same ink, and apparently by the same pen. Now here is some internal evidence to rebut the presumption that the interlineations were made subsequent to execution. Matter of Dake, 75 App. Div. 403, 78 N. Y. Supp. 29; In re Potter's Will (Surr.) 12 N. Y. Supp. 105; In re Homes' Will (Surr.) 11 N. Y. Supp. 898.

After careful consideration I am entirely satisfied that the interlineations in the paper propounded were made by the testator himself before execution, and that they are entitled to probate as part of his will. Proceed accordingly.