WILLIAM H. CROSSMAN et al., Appellants, *v.* HENRY G. CROSSMAN et al., Respondents.

Where a will is executed in duplicate, both duplicates being executed at the same time, it is not necessary that both should be admitted to probate ; it is proper, however, when one is presented for probate, that the other should be produced in order that it may appear that they are alike in all particulars, and also that the will has not been revoked, as the revocation of one would be the revocation of both.

*It seems* that if two testamentary instruments are executed at the same time, containing different provisions, they constitute, taken together, the will of the testator, and both must be proved and admitted to probate.

Under the provisions of the Code of Civil Procedure (§ 2614), requiring in proceedings for the probate of a will, the presentation of a written petition " describing the will," it is not essential, in order to give the surrogate jurisdiction, where the will was executed in duplicate, that this fact should be stated in the petition.

Where a petition in such case gave the date of the will, stated that it related to both real and personal estate, and was signed by the witnesses

named, and also named one of the executors, *held*, that the description was sufficient to give the surrogate jurisdiction.

In the duplicate not presented for probate the name of one of the executors, which was regularly written in the other, was interlined, it apparently having been omitted in copying; the interlineation was noted at the bottom before the attestation clause, with a statement that it was made before signing, *held* that there was no presumption that the interlineation was fraudulently made after execution, but on the contrary the presumption was the other way, and the burden was upon the contestants of showing that the interlineation was fraudulent or unauthorized.

*It seems* that when an interlineation, fair upon the face of an instrument, is entirely unexplained, there is no presumption, in the absence of any suspicious circumstances, that it was fraudulently made after the execution of the instrument.

(Argued January 30, 1884; decided February 26, 1884.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department entered upon an order made September 11, 1883, which affirmed a decree of the surrogate of the county of Kings denying an application to revoke the probate of the will of Henry Crossman, deceased. (Reported below, 30 Hun, 385.)

The facts so far as material are stated in the opinion.

*Henry L. Clinton* for appellants. When a will is executed in duplicate it is necessary to present both duplicates for probate. (Code Civ. Pro. §§ 2472, 2614, 2635; *Bloom* v. *Burdick*, 1 Hill, 139; *Jones* v. *Reed*, 1 Johns. Cas. 20; 4 Black. Com. 268; *Rex* v. *Whitear*, 3 Burr. 1366; *Corwin* v. *Merritt*, 3 Barb. 341, 343.) Both copies so executed constitute the will. (Wharton's Law of Evidence [2d ed.], 79, § 74; *Roe* v. *Davis*, 7 East, 363; *Carlisle* v. *Blamire*, 8 id. 487; *Paul* v. *Meek*, 2 Y. & J. 116; *Houghton* v. *Koenig*, 18 C. B. 235; *Stowe* v. *Querner*, L. R., 5 Exch. 155; *Cleveland R. R.* v. *Perkins*, 17 Mich. 296; *Munn* v. *Godbold*, 3 Bing. 292; *S. C.*, 11 Moore, 292; *Doe* v. *Ross*, 7 M. &. W. 102; *Hall* v. *Ball*, 3 M. & Gr. 242; *Hawes* v. *Forster*, 1 M. & Rob. 368; *Gresham* v. *Taylor*, 51 Ala. 505; *Alwoon* v. *Furnivall*, 1 C. M. & R. 292; *Colling* v. *Treewick*, 6 B. & C. 206; *Phillipson* v. *Chase*, 2 Camp. 111; Williams on Executors, 154; 1 Red-

field on Wills, 305; 2 Greenl. Ev. [13th ed.], § 682; 1 Jarm. on Wills [5th Am. ed.], 296, 297; *Richards* v. *Munford*, 2 Phil. 23; *Doe* v. *Strickland*, 8 Common B. 724; *Hubbard* v. *Alexander*, L. R., 3 Ch. Div. 738; *Boughey* v. *Moreton*, 2 Lee's Eccles. 532; *Colvin* v. *Frazer*, 2 Haggard's Eccles. 266; *Burtonshaw* v. *Gilbert*, Cowp. 49; *Onions* v. *Tyner*, Vernon, 742; *Roberts* v. *Round*, 3 Haggard's Eccles. 548; *O'Neall* v. *Farr*, 1 Rich., L. R. [S. C.] 88; *Killican* v. *Lord Parker*, 1 Lee's Eccles. 662; 1 Williams on Executors, 359; *Forman Will Case*, 54 Barb. 285.) Even if two testamentary papers, executed at the same time, contain inconsistent provisions, they constitute in legal effect but one paper. (*In re Forman's Will*, 54 Barb. 275, 284.) The whole will, not a part of it, should be offered for probate in the first instance. The probate of a part of a will is no probate at all. (*Hubbard* v. *Alexander*, L. R., 3 Ch. Div. 738; *Boughey* v. *Moerton*, 2 Lee's Eccles. 532; *Colvin* v. *Frazer*, 2 Haggard's Eccles. 266; *Roberts* v. *Round*, 3 id. 548; 1 Williams on Executors, 359; *Doe* v. *Strickland*, 8 C. B. 724.) It is the duty of the surrogate to revoke the probate of a will, whenever it appears before him by proper proof in any proceeding that such probate ought not to have been granted. (*Dam's Estate*, 1 Tuck. 107; *Merchant Will Case*, id. 17.) Upon the trial before the surrogate, on the allegations of contestants, he had no legal power to admit the alleged duplicate to probate had he been asked to do so by proponent. (Code Civ. Pro., §§ 2651, 2652.) In the absence of explanatory evidence, the law presumes that all alterations made in a will, were made after its execution. (*Goods of Sykes*, L. R., 3 P. &. D. 26; Abb. Trial Evidence, 133.) The burden of proof was upon proponents to show that the will was executed in accordance with the statutory formalities. (*Delafield* v. *Parish*, 25 N. Y. 35; *Howland* v. *Taylor*, 53 id. 627.)

*H. W. Bookstaver* and *James R. Steers, Jr.*, for respondents. One duplicate of a will is not a part of the will in the sense that it must be read with the other, in order to learn what the

will of the testator is. (*Odenwaelder* v. *Schorr*, 8 Mo. App. 458.)

EARL, J. Henry Crossman, the testator, died in January, 1881, leaving a will executed in duplicate. The duplicates were executed at the same time, with the same subscribing witnesses, and contained the same provisions, and the same language. One of the duplicates was produced before the surrogate, and was duly proved and admitted to probate, January 28, 1881. Within a year thereafter several of the heirs and next of kin of the testator filed allegations against the validity of the will, the competency of its proof and the mental capacity of the testator, under the provisions of the Code of Civil Procedure. (§§ 2647 to 2653.) On the trial of these allegations before the surrogate, the proponents produced their testimony in support of the will and rested. Among their proofs was the duplicate copy of the will executed by the testator, which they offered in evidence for the purpose of showing that it was identical with the will proved, and that there had been no revocation of the will, but not for the purpose of having it admitted to probate as a will. The counsel for the contestants objected to the proof on the ground that the alleged duplicate was not admissible in evidence for the purposes specified, or for either of them, and also upon the ground that it was inadmissible in evidence for any purpose whatever. The surrogate admitted the will in evidence for the limited purpose for which it was offered, but not, as he stated, "with the idea that it can be admitted to probate in this proceeding, that question being reserved for future consideration, if it be raised." The counsel for proponents offered to file with the court the duplicate will, and the counsel for the contestants objected, and the duplicate was thereupon put in evidence. After the proponents had rested their case the contestants moved that the probate of the will be revoked on the ground "that it appeared in evidence before the surrogate, that at the time the paper, admitted to probate as a will of the said Henry Crossman, deceased, was executed, another paper,

claimed to be a testamentary instrument, was executed by him at one and the same time ; that the said two testamentary papers were signed by the alleged testator at one and the same time, there having been no separate execution of either of said alleged testamentary papers, and that only a part of the alleged last will and testament of Henry Crossman, deceased, had been admitted to probate." The motion was denied by the surrogate, and after hearing all the evidence offered by the parties he made a decree dismissing the allegations of the contestants and affirming the original probate. The contestants appealed from his decree to the General Term of the Supreme Court, where it was affirmed, and they then appealed to this court, and here rely upon several allegations of error which will be noticed.

The contestants claim that, as these duplicates were executed at the same time by the testator, as his last will and testament, it was necessary for the proponents to offer both for probate at the same time, and to have an adjudication by the surrogate upon both. It is undoubtedly true that where two testamentary papers are executed at the same time, with the formalities required by law, they must be taken together to constitute the will of the testator. If the two papers contain different provisions, the one making bequests or devises not contained in the other, then both must be proved and admitted to probate, and both constitute, when read together, the will of the testator, as if all the provisions of both were contained in one instrument. (*In the Matter of Forman's Will,* 54 Barb. 274.) This is only a branch of the general rule applicable to all written instruments, relating to the same transaction, executed at the same time, for the purpose of expressing the intention of the parties in reference thereto. All the instruments in such cases set forth the transaction, and embody the intention of the parties, and they must always be read together. But where an agreement is reduced to writing in duplicates, each being exactly like the other, then there can be no reason to require a party, in proving such an instrument, to produce both. It is very common to execute leases and other instruments in duplicates, each party having one, and where they are precisely

alike either party can come into court and produce the duplicate which he has, and prove it; and he need not prove or cause the production of the other. So if the same party has duplicate instruments executed for his own benefit and safety, each duplicate expresses the entire agreement of the parties, and either may be proved without the other. The same rule must be applicable to wills. Where the duplicates are exactly alike, each expresses and contains the will of the testator; and either may be proved and admitted to probate without the other. There can be no conceivable reason for proving both, or for having both admitted to probate; and no authority in this country or England has been found which holds that in such a case it is necessary that both should be proved or admitted to probate. The proponents of either duplicate can undoubtedly be required to produce the other, so that both may be before the court for inspection, that it may be seen whether they are precisely alike, or whether there has been any revocation. But when it appears that they are alike, and that there has been no revocation, then it would be quite an idle ceremony to prove both, or to admit both to probate. Numerous cases were cited by the learned counsel for the contestants, holding that where a will is executed in duplicates a revocation of one according to law *animo revocandi* is a revocation of both. As each contains the will of the testator, a revocation of either is a revocation of his will, and thus revokes both. The following are some of the authorities cited: (1 Williams on Executors, 154; 1 Redfield on Wills, 305; 2 Greenl. Ev., § 682; 1 Jarm. on Wills, 296, 297; *Hubbard* v. *Alexander*, L. R., 3 Ch. Div. 738; *Doe* v. *Strickland*, 8 Com. Bench, 724; *O'Neall* v. *Farr*, 1 Richardson L. R. [S. C.] 80.) None of the cases give any countenance to the idea that both duplicates must be admitted to probate. It does not take the two duplicates to express the will of the testator, but his will entire is found in each. In this case, before the surrogate, all was done which is required by any rule of law or even of prudence. The duplicate not probated was produced, proved and filed with the surrogate. In *Odenwaelder* v. *Schorr* (8 Mo. Ap. R. 458), where

a will was executed in duplicates at the same time, just as this was, it was held that both were the same will, not that it took both papers to make the will of the testator, and that it was immaterial which was proved. The judge writing the opinion said: "Both papers, if executed at all, were executed at the same time, with the same intention, and are word for word the same. It is therefore immaterial which is proved. They are the same, and each of them, if a will at all, is the last will of the deceased."

The objection at this stage of the case, that both wills were not admitted to probate, is quite technical, as the contestants upon the trial before the surrogate, when the duplicate was produced, strenuously objected to its reception in evidence for any purpose whatever. If they had desired to have it admitted to probate with the other duplicate, or to have had the surrogate adjudicate upon it with the other duplicate, he would doubtless have done so, and was prevented from doing so mainly, if not exclusively, upon their objection.

But it is also strenuously objected that section 2614 of the Code was not complied with in the petition presented to the surrogate for probate of the will. That section provides that the proponents may present to the surrogate having jurisdiction a written petition duly verified, "describing the will," setting forth the facts upon which the jurisdiction of the court to grant probate thereof depends, and praying that the will may be proved, and that the persons specified may be cited to attend the probate thereof. The objection made is that the surrogate did not obtain jurisdiction to prove this will because the petition failed to describe it. In the petition it is stated that the last will and testament related to both real and personal estate, bore date the 29th day of November, 1879, and was signed by the witnesses, naming them; and one of the executors was also named. That was certainly a description of the will, sufficient to give the surrogate jurisdiction. Whether it should have been fuller, or more particular, was undoubtedly for him to determine. He could have required, when the petition was filed with him, that it should be made more certain and definite in reference

to the will. He might have required the petition to state, whether there was or was not a duplicate, and other facts pertaining to the will. The claim of the contestants is that the petition should have described the will as executed in duplicates; but that was not essential. There was but one will, whether it existed in one or two papers, or more, and that will was executed at one date; there were but two witnesses to it, and it related to real and personal estate. It was the precise will described, and whether it was expressed in one or many papers it was unnecessary to mention in the petition. That was ample as a basis for the proceedings taken in the surrogate's court. As soon as it is brought to the attention of the surrogate that there are duplicates of a will presented to him for probate, it is proper that he should require both duplicates to be presented, not for the purpose of admitting both as separate instruments to probate, but that he may be assured whether the will has been revoked, and whether each completely contains the will of the testator.

In the duplicate will there was an interlineation of the name of one of the executors which had apparently been left out in copying, and the interlineation was noted at the bottom of the will before the attestation clause: and it was there said that the interlineation was made before the execution. The interlineation was necessary to make the two duplicates precisely alike. The claim on the part of the contestants is that the law presumes that this interlineation was made after execution, and hence that without any explanatory evidence it would have to be held that these were not duplicates; that while the duplicate admitted to probate contains three executors, the one not admitted to probate contains but two. But we do not so understand the law in this State. Where an interlineation, fair upon the face of an instrument, is entirely unexplained, we do not understand that there is any presumption that it was fraudulently made after the execution of the instrument. But here the interlineation was noted at the bottom of the instrument before the attestation clause; and so too the interlineation was necessary to make it a duplicate which it was

evidently intended to be as the papers were marked on the back " done in duplicate." Taking all these circumstances there was sufficient to cast the burden upon the contestants to show that the interlineation was fraudulent and unauthorized.

In 1 Greenleaf (§ 564) it is said : " If the alteration is noted in the attestation clause as having been made before the execution of the instrument, it is sufficiently accounted for, and the instrument is relieved from that suspicion: and if it appears in the same handwriting and ink, with the body of the instrument, it may suffice." And, again, " generally speaking, if nothing appears to the contrary, the alteration will be presumed to be contemporaneous with the execution of the instrument." In *Speake* v. *United States* (9 Cranch, 37), STORY, J., says: " The fact that there is an erasure or interlineation apparent on the face of the deed does not, of itself, avoid it. To produce this effect, it must be shown to have been made under circumstances that the law does not warrant." In *Bailey* v. *Taylor* (11 Conn. 531), it was held " that where there is an erasure or alteration in an instrument under which a party derives his title, and the adverse party claims that such erasure or alteration was improperly made, the jury are, from all the circumstances before them, to determine whether the instrument is thereby rendered invalid."

Here, from all the circumstances it was, at least for the surrogate, to determine whether this interlineation was made before or after execution; and in making that determination he was bound to consider the handwriting, the color of the ink, the manner of the interlineation, the fact that it was noted at the bottom of the instrument, and that it was made to correspond with the other duplicate. Where an interlineation or erasure in a will is fair upon its face, and it is entirely unexplained, there being no circumstance whatever to cast suspicion upon it, it would not be proper for any court to hold that the alteration was made after execution; but if there are any suspicious or doubtful circumstances growing out of the mode of the alteration, the ink in which it was made, the fact that it was in favor of the party holding the instrument, and

that it is not noted at the bottom, then these and all the other circumstances must be submitted as questions of fact to be determined by the court, in deciding whether the alterations were made before execution or not. Here there was at least enough, if any evidence under the circumstances was required, to call for the judgment of the surrogate, and his decision must be final.

The subscribing witnesses to these duplicates testified to all the facts necessary to their admission to probate, and whether there was any thing in their evidence or their appearance to shake their credibility, or cast doubt upon their evidence, was for the surrogate to determine. We cannot therefore review his decision upon the evidence. His finding thereon concludes us.

We have now noticed the most material allegations of error made by the contestants against the judgment appealed from, and are of opinion that none of them are well founded, and that it should be affirmed with costs.

All concur.

Judgment affirmed.