In the Matter of the Estate of MARGARET A. DE COSTER, Deceased.

Surrogate's Court, Kings County, March 20, 1934.

*Thomas J. Snee*, for the petitioner.

WINGATE, S. The present application for probate of an alleged codicil presents certain unusual features.

On May 14, 1930, testatrix executed a will in which, *inter alia*, she divided her residuary estate among three of her children, giving one-fourth thereof to her son Robert, one-fourth to her daughter Grace, and one-half to her daughter Eva. All three were living at the time of her death, which occurred on May 6, 1932, and were duly cited in a proceeding to probate the will. The will being duly proved, it was admitted on June 17, 1932.

This petition for probate recited in usual language that the petitioner did " not know of any other will or any codicil to said will, or of any other instrument purporting to be such, nor is there any to petitioner's best information and belief."

By affidavit executed November 15, 1933, and filed in this court on December twenty-seventh, the petitioner in the probate proceeding set forth " that prior to her [decedent's] death, and on or about the 26th day of September, 1931, decedent caused to be prepared a codicil to the within Will, and that on or about the 9th day of October, 1931, she had a similar codicil prepared by Thomas J. Snee, an attorney, in accord with her wishes as expressed in the original codicil." It further recites petitioner's unavailing efforts to find such codicils, her conclusion that they had been destroyed and her subsequent finding of the presently propounded instrument dated September 26, 1931, but the continued absence of that of October ninth.

On the strength of this affidavit and of a petition containing similar statements, an order was made by this court on February 23, 1934, opening the probate decree and directing the issuance of a citation to decedent's heirs at law and next of kin to show cause why the probate of the will should not stand, and the submitted codicil should not also be admitted to probate.

All of the living statutory distributees of the decedent have filed waivers and consents to such a decree, as has the executrix of testatrix's son Robert, who survived testatrix but died on June 25, 1932.

The " codicil " to which the court is thus requested to give effect is handwritten on a sheet of paper apparently torn from a blank book and reads as follows:

" CODICILE

" In the event of my Death before this Codicile is properly drawn by an attorney I make the following change to this my last will   In paragraph number Six of my will in which I leave one quarter part of my Estate to my son Robert A. De Coster   I desire to change the part of my will to read that portion mentioned to go to my son Robert A. De Coster is to be evenly divided between my Daughter Eva E. Disken and my Daughter Grace Hunter less a sufficient sum necessary to bury my son Robert A. De Coster.

" MARGARET A. DeCOSTER

" Witnesses
  " JAMES F. DISKEN
  " KENNETH J. DISKEN
" *September* 26th 1931."

The due execution of this instrument by the decedent has been proved by the subscribing witnesses.   This demonstration does not of itself, however, warrant the probate of this instrument in the present state of the record.

Testatrix's intent in its execution is obvious.   In her will she had bequeathed one-fourth of her residuary estate to her son Robert. She desired to reduce this bequest to a sum sufficient to defray his funeral expenses.   The second important circumstance respecting her state of mind at the moment was that she had no particular confidence in her own abilities as a testamentary draftsman. Whereas, therefore, she desired to effect an immediate change in her testamentary disposal in this regard, she purposed the prompt employment of a qualified attorney to perform this office for her, with the expressed intention that when her desires were legally expressed, the presently executed instrument should become a nullity.   In this connection the words respecting the efficacy of the home-made codicil placed a limit on its legal duration: " In

the event of my death before this Codicile is properly drawn by an attorney."

In view of the apparent purpose of testatrix to have this alteration of her testamentary disposition effective from the moment of her execution of the codicil of September twenty-sixth, it is obvious that her words respecting its effectiveness until a new codicil was " properly drawn by an attorney " should be construed as meaning until such superseding instrument drawn by an attorney should become effective as a legally valid substitute for the presently executed document.

The record is entirely silent upon the subject as to whether this ever took place. It is, to be sure, alleged that testatrix " had a similar codicil *prepared*, in accordance with her wish as expressed in the original codicil," but this falls far short of the requisite demonstration that this subsequent instrument was duly executed in accordance with law in a manner which would have permitted its validization as a lawful testamentary document, and until this took place the instrument of September twenty-sixth would be effective as such. On the other hand, a sufficient inference of due execution can be drawn from these loosely worded statements to prevent the court from probating the temporary instrument.

The codicil of September twenty-sixth is clearly a conditional instrument, the effectiveness of which for any purpose would terminate upon the taking effect of the contemplated subsequent codicil prepared by an attorney. (*Matter of Poonarian*, 234 N. Y. 329, 332; *Matter of Bittner*, 104 Misc. 112, 114; *Ex parte Lindsay*, 2 Bradf. Surr. 204, 207, 208.) (See, also, *Matter of Webb*, 122 Misc. 129, 135; affd., 208 App. Div. 793.)

If the subsequent codicil did become operative, this codicil thereupon became a nullity and the testamentary devolution would be modified by the terms of the later document which should be proved, if possible, in the usual manner in case the original instrument can be produced.

Whether or not such second codicil could be admitted to probate if not produced, depends upon matters concerning which the record is silent. The executrix alleges merely " that although she had searched for the codicil, she could not find it." A hundred and twenty million other people could unquestionably truthfully make affidavit to the same fact without in any way raising a presumption that the instrument, if actually executed by the testatrix, was destroyed by her *animo revocandi*. Such an inference will arise only where the document is " shown  *  *  *  to have been in testator's possession " when last seen (*Matter of Staiger*, 243 N. Y. 468, 472; see, also, *Matter of Kiltz*, 125 Misc. 475, 479; *Matter of*

*Vogelsang,* 133 id. 395, 396; *Matter of Ascheim,* 75 id. 434, 435; *Matter of Sharp,* 134 id. 405, 406), on which subject the record is wholly silent.

Finally, if such second codicil was duly executed and contained directions similar to those of the propounded instrument, it would effect a *pro tanto* revocation of the original will. (*Matter of Greenberg,* 141 Misc. 874, 877; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Meiselman,* 138 Misc. 104, 107; *Matter of Ford,* 135 id. 630, 633.) If then such codicil were determined to have been revoked, this could not effect a revival of the provisions of the original will, which would remain a permanent nullity (*Matter of Greenberg,* 141 Misc. 874, 877; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Osburn* v. *Rochester Trust & S. D. Co.,* 209 id. 54, 58; *Matter of Wylie,* 162 App. Div. 574, 576; *Matter of Ford,* 135 Misc. 630, 633; Dec. Est. Law, § 41), with the result that the portion of the residuary gift to Robert in the original will not required for his burial would pass as intestate property. (*Matter of McCafferty,* 142 Misc. 371, 381; affd., 236 App. Div. 678; *Matter of Perelman,* 148 Misc. 906, 908; *Matter of Hartmannsgruber,* 146 id. 85, 87; *Matter of Smallman,* 141 id. 796, 799; *Matter of Hartfield,* 139 id. 214, 217.)

It will be obvious from the foregoing that the several questions herein cannot be determined on the present record but that it is necessary that testimony be adduced as to the execution, terms and disposition of the alleged second codicil, which it is the duty of the executrix to present.

Proceed accordingly.