In the Matter of the Estate of ANTONIA ANDRIOLA, Also Known as ANTONIA DRIOLA, Also Known as ANTONIA ANDREOLA, Deceased.

Surrogate's Court, Kings County, October 14, 1936.

*Vincent J. Bensi*, for the proponent, Giovanni Andriola.

*Philip Rosenberg*, for the contestants, Angelina Caramelli, Raffaela Romano and Rose D'Alissio, heirs at law and next of kin of the decedent.

WINGATE, S. At the time the original motions, respectively for a bill of particulars and an examination before trial of the proponent, were made, the court was not advised of the somewhat unusual conditions relating to the propounded instrument. It now appears that the will was executed in duplicate. Only one of the counterparts has been produced.

The basic issue on the present motion for reargument concerns the location of the burden of proof respecting revocation or non-revocation of the two part instrument. If the burden is on the proponent to account for the non-production of the counterpart before the admissibility to probate of the duplicate original alone may be decreed, the contestant would, in the usual case, be denied the opportunity of inquisition into the subject, through the medium of an examination before trial, since this is customarily granted only in aid of those matters upon which the examiner must bear the burden of affirmative demonstration. (*Matter of Zaiss*, 147 Misc. 616, 617.)

On the other hand, if such examination be denied for this reason, the contestants would ordinarily be entitled to a bill of particulars demonstrating in reasonably intelligible form the position of the proponent as to how and why the probate could be permissible when only one of the duplicate originals has been produced (*Matter of Herle*, 157 Misc. 352, 356), since usually in litigations of this nature, a denial of the right of examination for the reason that the burden of proof in respect to the desired subject-matter of the

inquisition is on the person sought to be examined, carries with it an implication of the right of the applicant to an amplification of the pleadings of his opponent.

The paucity of adjudications respecting the rules of probate where the will has been executed in duplicate or multiplicate indicates that few testators or testamentary draftsmen are so ill-informed or incautious as to multiply the difficulties of probate by indulgence in this wholly useless and extremely unfortunate practice.

When such an act is performed, all of the counterparts, collectively, constitute the will of the testator (*Crossman* v. *Crossman*, 95 N. Y. 145, 149), but whereas it has been authoritatively determined that the proponents of any one of the counterparts may be required to produce or satisfactorily account for the absence of the others so that they may be before the court for inspection, and be ascertained to be identical, only one is to be admitted to probate when such identity has been determined. (*Crossman* v. *Crossman*, *supra*, p. 150; *Roche* v. *Nason*, 185 N. Y. 128, 135.)

The law is thoroughly established that " where a will is executed in duplicates, a revocation of one according to law *animo revocandi* is a revocation of both. As each contains the will of the testator, a revocation of either is a revocation of his will, and thus revokes both." (*Crossman* v. *Crossman*, 95 N. Y. 145, 150; *Asinari* v. *Bangs*, 3 Dem. 385, 386; *Matter of Schofield*, 72 Misc. 281, 286; *Matter of Field*, 109 id. 409, 410; *Matter of Moore*, 137 id. 522, 523.)

In every case the burden of proof rests or should rest upon the proponent of demonstrating to the satisfaction of the surrogate (Surr. Ct. Act, § 144) that the propounded instrument is in fact the last duly authenticated free expression of the testamentary desires of the decedent (*Matter of Bossom*, 195 App. Div. 339, 344), since he, in effect, is in substance alleging the existence of a series of facts the composite result of which would be to divert the assets of the decedent from those persons who would normally receive them under section 83 of the Decedent Estate Law. In the usual case the weight of this burden is lightened in some respects by the application of various inferences, such as those of the continuance of a fact once shown to have existed, of mental competence and of the absence of improper action by those surrounding the testator. Wherefore it follows, still in the usual case, that the actual production of an instrument duly authenticated as required by statute raises the inferences that it is actually the last will of the decedent, and that the latter was competent and uninfluenced, and casts upon those objecting to its probate the burden of adducing a con-

trary demonstration. Whether from a strictly logical standpoint the burden thus imposed is actually, as is usually stated, a burden of proof, or merely a burden of going forward with proof, is not a matter of any moment in the present connection. Whichever be deemed its essential nature, the fact remains that the production of a duly authenticated document raises a strong inference or " presumption " that it is entitled to probate because, and only because, that is the usually natural sequence of events under such circumstances.

When, however, any of the usual conditions attending admissibility of the document are patently absent, the premise upon which the syllogism leading to *prima facie* right to probate rests, fails, and the onus of the basic obligation of the proponent in the totality of demonstration is increased, since under such conditions he is denied the aid of the inferences or presumptions which usually exonerate him from the performance of the more difficult portions of his task.

Such a case is one in which the physical production of the propounded instrument is impossible. If it were strictly true as is sometimes stated (Cf. *Matter of Crouse*, 205 App. Div. 135, 142; affd., 238 N. Y. 583) that revocation of a will is purely an affirmative defense in respect to which the burden of *proof* is upon those seeking denial of probate, it would logically follow that a mere demonstration of the due execution of the lost document and of its terms would entitle it to probate. Such is not, however, the law. In such a case the proponent must prove more, namely, in effect that it was not destroyed by the testator in his lifetime (Surr. Ct. Act, § 144) although here again he may be aided by inferences, as from the fact that the will was not delivered into the testator's possession. (*Matter of DeCoster*, 150 Misc. 807, 810.)

The foregoing observations are not intended as an intimation of the propriety, or, indeed, of the advisability of any alteration of the existing standards of determination of the location of the burden of proof on the ordinary issues in probate proceedings. These are well understood and the instances in which abstract justice would better be promoted by an application of the logically correct distinctions between the burden of proof and the burden of going forward are negligible in number. In situations, however, in which the law is not firmly established and in which logical inferences of validity are not inherent in the demonstration, as where the will is not " fair on its face," the onus of the burden of proof should be uniformly placed on the proponent, who, in effect, is seeking to demonstrate the propriety of a differing devolution of the assets of the decedent from that which would occur were no valid will in existence.

In the present proceeding the propounded instrument is obviously merely a carbon copy, which raises an inference that the original or face copy was also in existence at some time, and it has been conceded before the court that such face copy or original was also executed by the alleged testatrix. Under such circumstances, the natural inference of validity is not raised, since the counterpart which has not been produced is equally the will of the decedent with the propounded instrument, and if revoked by the decedent would nullify the latter.

Under such circumstances, in the absence of controlling authority to the contrary, the burden of proof should be deemed to rest on the proponent to allege and demonstrate that the propounded document is in reality one which is legally effective for the purpose of diverting the assets of the deceased from the usual statutory distributees.

Fortunately the only relevant authority on the subject is consonant with the views herein expressed. This is found in a statement in *Crossman* v. *Crossman* (95 N. Y. 145, 151) in which the court, in disposing of an objection to the probate of one of two copies of a will executed in duplicate, observed: " The objection made is that the surrogate did not obtain jurisdiction to prove this will because the petition failed to describe it. In the petition it is stated that the last will and testament related to both real and personal estate, bore date the 29th day of November, 1879, and was signed by the witnesses, naming them; and one of the executors was also named. That was certainly a description of the will, sufficient to give the surrogate jurisdiction. *Whether it should have been fuller, or more particular, was undoubtedly for him to determine. He could have required, when the petition was filed with him, that it should be made more certain and definite in reference to the will. He might have required the petition to state, whether there was or was not a duplicate, and other facts pertaining to the will.*" (Italics not in original.)

In the case at bar the contestants are seeking through the medium of a bill of particulars to compel the proponent to supply the amplification indicated, and a direction to this effect is obviously within the authority of the court on the cited authority, and will accordingly be granted in the interests of substantial justice for the purpose of informing the adversaries of the proponent of the basic facts on which he predicates his contention of the propriety of the probate of the propounded document. (*Bjork* v. *Post & McCord,* 125 App. Div. 813, 814; *American Condiments Co.* v. *Audit Company of N. Y.,* 164 id. 927, 928; *Matter of Herle,* 157 Misc. 352, 356.)

Since, as to the unproduced counterpart, the proceeding closely approximates that applicable to the proof of a lost or destroyed will, the particulars to be furnished will include a statement as to whether or not the will of the decedent was executed with more than one original, and if so, their number. It will also contain the allegations respecting the unproduced counterparts which would be required for proof of a lost will under section 143 of the Surrogate's Court Act other than the text thereof.

In view of the novelty of the questions presented, no costs of the application will be allowed.

Enter order on notice in conformity herewith.