Edward M. Hobey, S.
The case at bar raises the recurring problem of alterations to a will. The facts presented follow.
The instrument offered for probate is a single lined sheet of- paper, dated .September 3, 1968. All introductory and dis-positive provisions of the will are typewritten and these are set forth on both the front and back of the instrument.
On the front of the instrument, and following paragraph second, a bequest of $1,500 to a son, -Charlton A. Steffenhagen, is a handwritten notation in ink, “ has been paid
Also on the front of the instrument, and following paragraph third, a bequest of $50 to each grandchild living at the death of the testatrix, is another handwritten notation in ink, “ Delete not to grandchildren not great grand JES Nov 1972 ”.
The figures of $5,000130 ”, and “ $50.00 ” appearing in an introductory paragraph on the front' page of the instrument have been bracketed with markings in ink. .Similar bracketing surrounds the “ $1,500 ” in paragraph second. The entire para *625 graph numbered third has also been enclosed in ink ¡bracket markings.
Only the two subscribing witnesses were .sworn. They testified to the due execution of the will and the testamentary capacity of the testatrix. The witnesses testified that the testatrix displayed only a portion of the will to them. They never saw any part of the will except the portion of the back thereof which contains the signatures of the testatrix, the attestation clause and their ¡signatures as witnesses. It was the opinion of the witnesses that the handwritten additions appearing on the front of the instrument following paragraphs second and third were in the handwriting of the testatrix. However, the witnesses stated with all candor that they had no ¡knowledge of whether either or both such additions were on this instrument at the time of its execution.
The legal effect of alterations to provisions of a will, whether by way of interlineations, obliterations, erasures, substitutes or otherwise, is repeatedly before our courts, particularly the ■Surrogate’s Courts of this State. There is, of course, general agreement that if the alteration occurred prior to the execution of the will, the will is to ,be admitted to probate in its altered form. There is also general agreement that if the alteration occurred after the execution, the alteration forms no part of the will and the will is probated without the alteration.
The general problem attending alterations to a will, whether by way of additions, interlineations, erasures or otherwise, arises from the requirement that a determination be made as "to when they occurred. The specific problem is how the question of when is properly resolved. It is the typical absence of persuasive evidence that causes the difficulty and leaves this area of the law uncertain and unfixed. There exists a veritable host of inconsistent, contradictory and incomplete judicial determinations throughout the United ¡States and England. (See extensive annotation, 34 ¡ALR 2d 619-676.) In this State alone, decisional support can be found for practically every conceivable approach to the problem.
It has been held, for example, that there is a presumption of law that alterations to a will have been made after execution. (Wetmore v. Carryl, 5 Redf. 544; Dyer v. Erving, 2 Dem. 160.)
Contrariwise, it has been held that alterations to a will are presumed to have been made ¡before execution. (Matter of Potter, 12 N. Y. S. 105.)
It has been held that the materiality of the alteration affects the presumption of law; that immaterial alterations are pre *626 sinned to have been made before execution, but no similar presumption exists for nonmaterial alterations. (Matter of Hamlin, 124 Misc. 847.)
It has been held that the matter of presumptions should be decided by reference to and application of the common law. However, there is marked disagreement as to what the presumptions were under the common law. In Wetmore v. Carryl (5 Redf. 544, supra), it was concluded that the common law raised the presumption that alterations were made after execution. A later Surrogate of the same court concluded that the determination in Wetmore v. Garryl was erroneous because it was predicated on decisions of the English courts made after the adoption of the Will Act of Victoria (1 Vict. ch. 26) in 1837. The Surrogate then reviewed the English cases prior to the adoption of the Will Act of .1837 and reached the contrary conclusion, viz: that the common law presumed alterations to have been made before execution. (Matter of Easton, 84 Misc. 1.)
Little has been written by our appellate courts on the subject matter.
In Van Buren v. Cockburn (14 Barb. 118, 122, 123) it was said that proof of due execution raises a presumption in law that the instrument executed is the will, but “ when it is made to appear that the will has been altered or changed, the presumption that it is the same paper which was executed disappears ” and the issue becomes a .simple question of fact to be resolved upon the evidence £ 1 uncontrolled and unembarrassed by any presumption one way or the other”. (Italics added,)
Our Court of Appeals has expressed itself once on the problem. This was in the leading case of Crossman v. Crossman (95 N. Y. 145 [1884]). There the court said (p. 152): ££ The claim on the part of1 the contestants is that the law presumes that this interlineation was made after execution * * * But we do not so understand the law in this State. Where an interlineation, fair upon the face of an instrument, is entirely unexplained, we do not understemd that there is any presumption that it was fraudulently made after!the execution of the instrument”. (Italics added.)
Later, in its opinion, the court observed further (pp. 153-154):Where an interlineation or erasure in a will is fair upon its face, iand it is ientirely unexplained, there being no circumstances whatever to cast suspicion upon it, it would not be proper for any court $o hold that the alteration was made after execution’, but if there are any suspicious or doubtful circumstances growing out of the mode of the alteration, the ink in which it *627 was made, the fact that it was in favor of the party holding the instrument, and that it is noted at the bottom, then these and all the other circumstances must be submitted as questions of fact to be determined iby the court, in deciding whether the alterations were made before execution or not (Italics added.)
The Court of Appeals did not define (when an alteration is “ fair upon its face ”, nor has this court discovered any subsequent definition by any other appellate court. In a review prepared for the New- York Temporary Commission on Estates, Professor Samuel Hoffman noted this void and offered the following comments: “ There is no precise definition of when an alteration is ‘ fair upon the face ’ of1 an instrument, but cases in which an alteration is needed to complete the sense of a provision, or to correct a scrivener’s error, or to make a counterpart conform, or is merely descriptive (and involves non-material matter) would likely come within the sense of the phrase”. (31 Brooklyn L. Rev. 220, 241-242.)
From the context in which the phrase was used by the Court of Appeals, subsequent decisions construing it and the explanations which have been given, this court reaches the conclusion that an alteration to a will may properly be considered “ fair on its face ” when the alteration considered alone reflects nothing doubtful or suspicious and is as consistent with reasons which would have prompted its making before as after the execution of the will:
Neither did the Court of Appeals state the basis on which an alteration to a will that is “ fair on its face ”, “ entirely unexplained ”, and not altered by any “ circumstances whatever to east suspicion upon it ” should be accepted by the courts as an alteration made before execution. Note is made that the direction for judicial acceptance of the alteration as made before execution was negatively stated as a prohibition against accepting such an alteration as one made after execution. Sic ‘ ‘ it would not be proper for any court to hold that [such] alteration was made after execution”. (95 N. Y. 145, 153.) However, since the only alternative to rejection is acceptance, the direction of the court stated as a prohibition is nonetheless a mandate.
It. is the negatively directed acceptance of an unexplained, unsuspicious alteration “ fair on its face ”, and the uncertainty of the legal basis to support the required acceptance, coupled with the fact that it is this type of alteration that is so frequently presented, that form the root causes of the inconsistent decisions in this area of the law. 'Compare, for example, the *628 decision in Matter of Hamlin (124 Misc. 847) where the learned Surrogate Wingate, without noting anything suspicious or unfair about certain alterations to a will, but only the absence of any evidence as to when they occurred, stated (p. 848): “ When material provisions of a will have been erased or altered and the court cannot determine from the proof whether the alterations were made before ór after execution, probate must be refused and the whole instrument rejected ”. -This decision appears completely contradictory to the decision of the Court of Appeals in Crossman v. Crossman (supra, p. 153) that held: “ Where an interlineation or erasure in a will is fair upon its face, and it is entirely unexplained, there being no circumstances whatever to east suspicion upon it, it would not be proper for any court to hold that the alteration was made after execution ”. It is noted that the absence of evidence explaining the alteration and the materiality of the alteration emphasized in Matter of Hamlin and in other decisions are not the criteria stated by the Court of Appeals as those on which decision is to rest. Materiality was not mentioned in the Crossman decision and the alteration which the court was discussing was one “ entirely unexplained ’ ’. It was the very absence of evidence that prompted the rule of the Court of Appeals that an unexplained, unsuspicious alteration, fair on its face could not properly be rejected by any court as' one made after execution.
It is the uncertainty of the proper legal basis on which application of the rule in Crossman v. Crossman is to rest that has led to the conglomerate of decisional law in New York. As a consequence of this uncertainty our courts on occasion appear to avoid application of the rule by straining to find evidence to resolve the issue of when the alteration was made. At other times they appear to ignore the rule or attempt to apply the rule and ascribe differing legal bases in support of it.
Whether the implicitly required judicial acceptance of an alteration wholly unexplained, unsuspicious and fair on its face as one made before execution, is to be based on a presumption of law, or on an inference of fact, or on the concept that the form, nature and type of such alteration, coupled with the absence of suspicious circumstances constitutes a sufficiency of proof on the issue, continues to plague our courts.
A review of the nature of presumption and an inference is helpful in resolving the question. A “ presumption ” and an “ inference ” are not the same thing, a presumption being a deduction which the law requires a trier of facts to make; an inference being a deduction which the trier may or may not *629 make according to his own conclusion^. A presumption is mandatory; an inference is permissible. (See Black’s Law Dictionary [4th ed.], p. 917 and cases cited.)
The permissible nature of an inference would appear to conflict with the direction of our Court of Appeals that an unexplained, unsuspicious alteration, fair on its face, be accepted as one made before execution. A “ mandated inference ” is a contradiction in terms. The freedom flowing from an inference is freedom to deduce. This would include freedom to deduce that such a described alteration was made after execution. Yet the Court of Appeals has said this tl would not be proper
The mandatory nature of a presumption would provide a legal basis to support the required acceptance of such an alteration. However, the Court of Appeals did not indicate that a presumption was.the basis for the required acceptance. In fact the court tended to negative this concept by pointedly noting that there was no presumption that an unexplained, unsuspicious alteration, fair on its face, was made after execution. Neither did the Court of Appeals hold that there was a presumption that such an alteration was made before execution. Further, the existence and application of a presumption that such alteration was made before execution would conflict with the appellate determination in Van Buren v. Cockburn (14 Barb. 118, supra) and other decisions which hold that there is no presumption in law “ one way or the other ” when an alteration to a will was made. Finally, there need be no resolution of a question of fact, stated to be a requirement in Van Buren v. Cockburn whenever any alteration to a will appears, if the matter is always to be resolved by a presumption of law.
There remains only the sufficiency of evidence as the proper legal peg on which to hang the required decisional hat — i.e., the required judicial acceptance of an unexplained, unsuspicious alteration to a will, fair on its face, as one made before execution and hence a part of the will.
It has been stated that “ sufficient evidence ” is such evidence in character, weight or amount as will legally justify the judicial or official action demanded. (See Black’s Law Dictionary [4th ed.], p. 1601.)
Under a concept of sufficiency of evidence, the presentation of an alteration to a will which was fair on its face would alone be evidence sufficient to resolve the question of fact required to be resolved in Van Buren v. Cockburn and also sufficient to compel the required conclusion of Crossman v. Crossman that the alteration was made before execution, if there was no evi *630 deuce of1 doubtful or suspicious circumstances that attended the alteration. If, however, there were doubtful or suspicious circumstances arising from evidence either intrinsic or extrinsic to the will, then an alteration fair on its face would not be sufficient evidence to sustain the burden of proof. The proponent would be required to present further evidence that the alteration was made before execution.
The merits of a sufficiency of evidence concept are that it provides a rational basis to reconcile the decisions of Crossman v. Crossman and Van Buren v. Cockburn, neither of which has been overruled. Such a concept is in keeping with the accepted requirement that a proponent of a will has the burden of proof to explain an alteration. (See extensive annotation, 34 ALR 2d 619, 643 and cases cited in New York and other jurisdictions.) It is consistent with what has been stated to be the * ‘ doctrine of the better considered American cases, and also, it seems, the correctly stated English doctrine ” that there is no presumption of law that alterations to a will were made after execution, rather that the question is one of fact. [34 ALR 2d 619, 636.] It is in accord with the views expressed in the review prepared for the Temporary .State Commission on Estates by Professor Samuel Hoffman who first concluded: “ Thus, although the burden is generally on the proponent to explain an alteration appearing on the face of an instrument, that burden is met if the alteration is ‘ fair upon the face ’ thereof, and the contestant must come forward with evidence to show that it was made after execution”, but who later qualified the positiveness of the quoted statement by explaining: “ Where, however, the circumstances are suspicious, as where the person in possession of the instrument containing the alterations seeks to benefit therefrom, the proponent has the burden of establishing that the change was made prior to execution ”. (See 31 Brooklyn L. Rev. 220, 241, 242.)
This court reaches the conclusion that the proper view in this .State is that an unexplained alteration to a will, fair on its face, can only survive in an atmosphere free of suspicion. Free itself of doubt and suspicion and unattended by any evidence casting doubt or suspicion upon it, however, it alone meets the burden of proof that it was made before execution of the will. This court adopts the sufficiency of evidence concept.
From the cases and authorities reviewed and the analysis made, five guideline rules would appear properly applicable whenever an alteration appears on the face of a will offered for probate, to wit: (1) Proof of an alteration to a will does *631 not raise a presumption in law either that the alteration was made before execution or after execution. (2) The determination of whether an alteration was made before or after execution is a question of fact to be resolved by available evidence which may be either extrinsic or intrinsic to the will. (3) The proponent of the will has the burden of proof on the issue of when the alteration was made. (4) If there is any evidence either extrinsic or intrinsic to the will that will cast suspicion upon the alteration, then the proponent has the burden of affirmatively proving that the alteration was made before execution, even if the alteration itself is fair on its face. (5) If there is no evidence either extrinsic or intrinsic to the will that casts suspicion upon the alteration, then the burden of proof that the alteration was made before execution is met if the alteration is fair upon its face. In the application of these rules it would appear that the definition of ‘ ‘ fair on its face ’ ’ previously reached would be in order.
Applying the rules which we have determined are applicable to the alteration ‘ ‘ delete ’ ’, etc. that follows paragraph third of the testatrix’ will, it is clear that this alteration is not independently free of doubt or suspicion. In contrast to the typed provisions of paragraph third, the alteration is penned in ink. It bears the handwritten initials of the testatrix. Most significantly, it is dated “Nov 1972” and this date also is in the handwriting of the testatrix. Cursory examination of the will evidences that the will was executed September 3, 1968, four years'earlier than the date of the penned addition. This alteration is not wholly unexplained; it is not fair on its face and it is not free of doubt or suspicion from evidence intrinsic in the will. The court finds that it is an alteration made after execution.
While section 3-4.1 of the EPTL changed the law previously established by section 34 of the Decedent Estate Law and decisions construing it as to revocation or alteration of an entire will, that section did not change the law referable to partial revocation of a .will. It remains the undeviating rule in this State that a will cannot be revoked in part by an act -of revocation. A part of a will ¡may only be revoked or altered by ‘ ‘ another will ’ ’, or by “ a writing of the testator clearly indicating an intention to effect such revocation or alteration, executed with the formalities prescribed by this article for the execution and attestation of a will ”. (EPTL 3-4.1, subd. [a], par. [1], cl. [B].) This long-standing rule, now embraced by statutory enactment, continues the determination made in the *632 case, of Lovell v. Quitman (88 N. Y. 377). (See Practice Commentary in McKinney’s Cons. Laws of N. Y., Book 17B, EPTL, pp. 381-382.) It is determined that the alteration to paragraph third does not qualify as a partial revocation of the will.
As to the ink brackets which surround various typewritten amounts of money in the introductory paragraph of the will and the figure ‘ ‘ $1500.00 ’ ’ in paragraph second, the court finds nothing doubtful or suspicious about them. The effect of such brackets is to set off the amount of money stated in figures from the same amount of money stated in writing. Examination of the will generally discloses that in paragraph third, bracketing for the same apparent reason was effected by the testatrix through typewritten bracketing figures. An attempt to achieve uniformity and punctuation of marking in proofreading before execution is as plausible and consistent as the introduction of such markings after execution. The penned bracketings are found to be fair on their face and free of suspicion from any evidence presented.
The penned addition 11 has been paid ’ ’ which follows the typewritten bequest in paragraph second of the will is the most troublesome of the alterations. While this addition, “ has been paid ” has not been dated or initialed, the undisputed testimony is that it is in the handwriting of the decedent. This fact negatives fraud or perversion of the will by someone other than the testatrix. From its position the statement has reference to the $1,500 bequest to the testatrix’ son, Charlton Steffenhagen. Contextually it expresses payment, a fact which may or may not be true. The court is concerned at this point only with when the addition was made and whether it is a part of the will of the testatrix to be admitted to probate. Viewed independently, the court finds nothing doubtful or suspicious concerning the notation “ has been paid ”.
Examination of evidence intrinsic to the will discloses that the notation appears to be in the same colored ink as was used in ^making the bracket alterations previously reviewed and which the court found were as consistent with reason which would have prompted their making before, as after, execution. Examination of the will also indicates that when the testatrix sought to delete paragraph third of her will, she accompanied the written direction for deletion with a date and her initials and surrounded the entire paragraph with brackets penned in ink. No similar practice was followed in connection with the addition which followed paragraph second.
As to the extrinsic evidence, it appears that one of the proponents of the will is the testatrix’ son, Charlton Steffenhagen, *633 the legatee named in paragraph second. Certainly, he cannot benefit by the probate of a will which ostensibly indicates that his legacy has already been paid. Such evidence tends to negative suspicion, not create it. Compare Matter of Ross (177 App. Div. 719) where proponent would have benefited by an alteration.
A reading of paragraph second indicates that the contained legacy of $1,500 to the son, Charlton, was to have priority over all other legacies in the will. Certainly this evidences a keen desire on the part of the testatrix that the stated sum be paid. Whether such sum has in fact been paid is unknown. Whether the notation that the sum “ has been paid ” was placed on the will before or after the same was executed is also unknown and a matter of complete speculation. The plain fact is that this alterations is ‘1 wholly unexplained ’ ’. Intrinsically free of doubt and suspicion and devoid of any evidence intrinsic or extrinsic to the will that casts suspicion upon it, it is, in the judgment of the court, the very type of alteration that is subject to the rule of Crossman v. Crossman (95 N. Y. 145, supra). Since it is improper for this court or any court under the terms of that rule to hold that such alteration was made after execution, it is, for the reasons previously reviewed in this opinion, determined that there is a sufficiency of evidence that such alteration was made before execution.
In accordance with the direction of Crossman v. Crossman, binding upon this court, and hopefully upon proper application of the rule in that case, it is the decision of this court that the will of the decedent be admitted to probate exclusive of the handwritten alteration following paragraph.'thibd directing deletion of the provisions of that paragraph, but inclusive of the penned bracketing of the money figures in the introductory paragraph of the will and the bracketing of the figures “ $1500.00 ” in paragraph second and inclusive of the handwritten addition “ has been paid ” which follows paragraph second.
Since the proceeding before the court is one of probate, and not construction, no determination of the truth or falsity or of the force and effect of the alteration “has been paid” is made at this time. Any ambiguity surrounding it may be determined upon a construction proceeding during the administration of the estate, or upon an accounting if this becomes necessary. -This court now holds only that the will of the decedent included this alteration.
A decree admitting the will to probate in accordance with this opinion should be entered.