OPINION OF THE COURT
Eve Preminger, S.
In this uncontested probate proceeding, the Public Adminis *588 trator has petitioned for letters of administration c.t.a. in the estate of Ethel Tier who died November; 24, 2000 at age 91. The typed will contains a number of handwritten changes, which petitioner asks be given no effect. In addition, petitioner asks that the will be admitted as an ancient document.
The handwritten changes to the will include the deletion of certain preresiduary bequests as well as the deletion of the nomination of a successor executor, an individual whose whereabouts are unknown. Each deleted section is accompanied by the signature “E Tier.” The testator signed the will as “Ethel Tier.”
The law is clear that while an alteration made to a will before execution is part of the will and accordingly will be given effect, an alteration made after execution of the will, but which does not revoke the will (see EPTL 3-4.1 [a] [2] [A]), will be ignored (see EPTL 3-2.1 [a] [1] [B]). Less clear, however, is the procedure for determining when an alteration, was made.
The timing of an alteration may be ¿stablished by evidence intrinsic or extrinsic to a will. An example of intrinsic evidence that alterations preceded execution of the will are signatures of the testator and attesting witnesses beside each alteration and a reference to each alteration in the attestation clause. Conversely, an alteration bearing a date subsequent to the date of execution is intrinsic evidence of its invalidity (e.g. Matter of Steffenhagen, 77 Misc 2d 624, 631 [1974]; Matter of Clarke, NYLJ, Mar. 21, 2002, at 24, col 5). Extrinsic evidence of the timing of an alteration may be in the form of an affidavit of the attorney who supervised execution of the will, to which is appended a photocopy or conformed copy of the will made immediately after execution. Extrinsic evidence may also be derived from the circumstances. For example, an interlineation containing a bequest to a child born after execution of the ¡will is ineffective (e.g. Estate of Danahy, NYLJ, Dec. 12, 2001, at 23, col 1).
If proponent offers no proof or insufficient proof as to the timing of an alteration, all persons whose interests are affected by the alteration must be cited (see SCPA 1420 [3]). A hearing may be held (see e.g. Matter of Dawson, NYLJ, Feb. 23, 1982, at 14, col 2).
If no evidence is adduced, as in the ihstant case, the law is somewhat murky as to the standard for ¡determining when the alteration was made.
As noted 30 years ago: “There exists a veritable host of inconsistent, contradictory and incomplete judicial determinations *589 throughout the United States and England. (See extensive annotation, 34 ALR2d 619-676.) In this State alone, decisional support can be found for practically every conceivable approach to the problem.”[1] (Matter of Steffenhagen, 77 Misc 2d 624, 625 [1974], supra.)
The leading New York case regarding the timing of an alteration to a will is Crossman v Crossman (95 NY 145 [1884]). In Crossman, the Court of Appeals found the interlineation— the insertion of the name of an executor omitted from one of two duplicate original wills — which was duly noted above the attestation clause of the will, preceded execution. Crossman was an unusual case in that the validity of the interlineation was not questioned in the original probate proceeding; indeed, the altered duplicate was not even proffered. Contestants in Cross-man commenced their proceeding to invalidate the will after the unaltered duplicate had been admitted to probate. Despite the peculiar posture and narrow holding of Crossman, its impact is broad: it dispels the notion that an alteration to a will is presumed invalid.[2]
The Court of Appeals enunciated factors a surrogate is bound to consider:
“Here, from all the circumstances it was, at least for the surrogate, to determine whether this interlineation was made before or after execution; and in making that determination he was bound to consider the handwriting, the color of the ink, the manner of the interlineation, the fact that it was noted at the bottom of the instrument, and that it was made to correspond with the other duplicate. Where an interlineation or erasure in a will is fair upon its face, and it is entirely unexplained, there being no circumstance whatever to cast suspicion upon it, it would not be proper for any court to hold that the *590 alteration was made after execution; but if there are any suspicious or doubtful circumstances growing out of the mode of the alteration, the ink in which it was made, the fact that it was in favor of the party holding the instrument, and that it is not noted at the bottom, then these and all t,he other circumstances must be submitted as questions of fact to be determined by the court, in deciding whether the alterations were made before execution or not.” (Crossman v Crossman, 95 NY 145, 153-154 [1884], supra.)
The Court’s opinion has been interpreted variously.
Some courts, ignoring a critical aspect of the Crossman analysis, disregard a lack of reference to an alteration at the bottom of a will as a “suspicious or doubtful” circumstance, to validate an otherwise “fair upon its face” alteration (Matter of Kelly, NYLJ, July 31, 2002, at 21, col 4; Matter of Quinn, NYLJ, Jan. 4, 1999, at 28, col 5; Matter of Hurwitz, NYLJ, Apr. 25, 1991, at 29, col 2; Matter of Aronson, NYLJ, Sept. 25, 1989, at 28, col 3; Matter of Rosenfield, NYLJ, May 11, 1987, at 15, col 6; Matter of Gallant, NYLJ, Feb. 10, 1987, at 7, col 3; Matter of Hecht, NYLJ, Nov. 24, 1980, at 15, col 2; Matter of Crozier, NYLJ, Jan. 11, 1980, at 12, col 1). These cases, in effect, hold that an alteration is valid in the absence of evidence to the contrary. This court declines to adopt such an approach. An alteration made prior to execution may be indistinguishable, on its face, from one made subsequent to execution. Therefore, to presume an alteration preceded execution makes no more sense than to presume it postdated execution.
Other courts have recognized the factors articulated by the Court of Appeals as the basis for a sufficiency of evidence standard. See e.g. Matter of Steffenhagen (77 Misc 2d 624, 630 [1974], supra), in which the court stated:
“It [a sufficiency of evidence concfept] is consistent with what has been stated to be the ‘doctrine of the better considered American cases, and also, it seems, the correctly stated English doctrine’ that there is no presumption of law that alterations to a will were made after execution, rather that the question is one of fact” (citation omitted).
A sufficiency of evidence approach, however, is of no avail in the instant proceeding, in which no evidence exists — save, perhaps, *591 the absence of a reference to the alterations in the attestation clause.[3]
The sound approach, once proponent fails to adduce evidence as to the timing of the alteration, is to cast the burden of establishing the effectiveness of an alteration upon the person whom the alteration would benefit, the person with the greatest incentive to prevail (Matter of Fodera, 96 AD2d 559 [1983]; Matter of Ross, 177 App Div 719 [1917]; Matter of Rose, 22 Misc 2d 993 [I960]; Matter of Willenborg, 16 Misc 2d 419 [1958]; Estate of Spaulding, NYLJ, Mar. 2, 1999, at 34, col 5; Estate of Parodi, NYLJ, Jan. 17, 1997, at 26, col 6). Indeed, it is only after proponent has failed to satisfy the court as to the timing of an alteration that the burden of proof question arises. Moreover, in cases in which proponent has a personal interest in the estate, placing the onus on proponent would result, in effect, in a shifting standard, depending on whether proponent’s interest would be affected by the alteration favorably or unfavorably.
In the instant case, the burden of proving that the alterations preceded execution is on the residuary beneficiaries, the parties who would benefit from the deletion of preresiduary bequests. None has offered evidence from which it may be inferred that the alterations preceded execution; accordingly, the alterations are deemed to have been made after the will was executed and are without effect.
The Public Administrator also asks that the proffered will dated August 27, 1974 be admitted to probate as an ancient document, as one of two attesting witnesses is deceased and the whereabouts of the other, despite a diligent search, are unknown.
A will may be admitted to probate as an ancient document if it is more than 20 years old (Matter of Davy, NYLJ, Dec. 20, 1999, at 30, col 2), it was taken from a natural place of custody and is of an unsuspicious nature (Matter of Brittain, 54 Misc 2d 965 [1967]; Estate of Borome, NYLJ, June 5, 2003, at 24, col 2; Estate of Lucki, NYLJ, Feb. 7, 2003, at 19, col 3; Estate of Bence, NYLJ, Feb. 3, 2003, at 20, col 3).
*592 The proffered will is almost 30 years old. It had been filed for safekeeping with this court by the decedent’s guardian about one year before the decedent’s deathj. Neither the place of custody nor the will itself raises any suspicion. An attorney, now deceased, drafted the will and witnessed its execution; a presumption of due execution thereby attaches to the will (Matter of Weinberg, 1 AD3d 523 [2003]). Therefore, the court will dispense with the testimony of the subscribing witnesses.
The court is satisfied with the genuineness of the instrument, the validity of its execution and the competence of the decedent (see SCPA 1408 [1], [2]). Accordingly, the will is admitted to probate in its original, unaltered state.

. Compare e.g. Matter of Potter, 12 NYS 105 (1890) (in which alterations to a will were presumed to have been made before execution), with Matter of Hamlin, 124 Misc 847 (1925) (in which immaterial alterations were presumed to have been made before execution but material alterations rendered probate of the will impossible).

. The Court of Appeals stated: “The claim on the part of the contestants is that the law presumes that this interlineation was made after execution . . . But we do not so understand the law in this State. Where an interlineation, fair upon the face of an instrument, is entirely unexplained, we do not understand that there is any presumption that it was fraudulently made after the execution of the instrument.” (Crossman v Crossman, 95 NY 145, 152 [1884], supra.)

. By contrast, the' Crossman court was presented with sufficient evidence: “But here the interlineation was noted at the bottom of the instrument before the attestation clause; and so too the interlineation was necessary to make it a duplicate which it was evidently intended to be as the papers were marked on the back ‘done in duplicate.’ Taking all these circumstances there was sufficient [szc] to cast the burden upon the contestants to show that the interlineation was fraudulent and unauthorized.” (Crossman v Crossman, 95 NY 145, 152-153 [1884], supra.)